UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SISAY BELAYNEH,

          Plaintiff,

    v.

HOLLAND AMERICA LINE INC.,

          Defendant.

CASE NO. C05-1549JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion for summary judgment from Defendant Holland America Line Inc. ("Holland America" or the "company") (Dkt. # 12). The court has considered the briefs and exhibits filed in opposition and support of the motion and has heard oral argument. For the reasons stated below, the court GRANTS Holland America's motion.

## II. BACKGROUND

Sisay Belayneh came to the United States as a political refugee from Ethiopia. He earned a college degree and landed his "dream job" as an accountant for Holland America, where he stayed for a over a decade. During his last year at Holland America, Mr. Belayneh applied for three different, higher-paying jobs within the company. Each time, Holland America passed him over for other candidates. After his second rejection,

ORDER – 1

Mr. Belayneh wrote a heartfelt letter to Holland America's Chief Financial Officer ("CFO") in which he praises the company's virtues, but explains his frustration over hitting a "glass ceiling." Belayneh Decl., Ex. C at 1. Three months later, he quit. In his December 20, 2004 resignation letter, Mr. Belayneh states his belief that Holland America denied him the opportunity to advance through the company ranks on account of his race, age and nationality. Id. at 3.

Mr. Belayneh filed suit against the company alleging race and national origin discrimination and workplace harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("section 1981"), and the Washington Law Against Discrimination, RCW § 49.60 ("WLAD"). He also alleges constructive discharge and the tort of outrage. Holland America now moves for summary judgment on all claims.

### III.  DISCUSSION

In examining a summary judgment motion, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the burden shifts to the non-moving party to show that there is a genuine issue of fact for trial. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party must present significant and probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). The non-moving party cannot simply rest on its allegations without any

ORDER – 2

significant probative evidence tending to support the complaint. <u>Celotex</u>, 477 U.S. at 324.

**A.     Failure to Promote**

Mr. Belayneh alleges that Holland America discriminated against him on the basis of his race and national origin when it denied him promotional opportunities on three separate occasions. The evidentiary framework articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-05 (1973), guides the court's review of the evidence on summary judgment for Mr. Belayneh's failure-to-promote claim.[1] Under the <u>McDonnell Douglas</u> framework, Mr. Belayneh bears the initial burden of establishing a prima facie case of discrimination by showing that: 1) he belongs to a protected class; 2) he applied for and was qualified for the position that he was denied; 3) Holland America rejected him despite his qualifications; and 4) the company filled the position with a person outside of his class. <u>See</u> <u>Dominguez-Curry v. Nevada Transp. Dept.</u>, 424 F.3d 1027, 1037 (9th Cir. 2005).

Once Mr. Belayneh establishes a prima facie case, the burden shifts to Holland America to produce evidence demonstrating that a legitimate, nondiscriminatory reason for its failure to promote Mr. Belayneh exists.[2] <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802. If Holland America satisfies this burden, the presumption of discrimination "drops out of the picture," and Mr. Belayneh must show that the company's alleged reason for not

---

[1] Although Mr. Belayneh alleges claims under Title VII, section 1981, and WLAD, the standard is the same for each. <u>See</u> <u>Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate</u>, 416 F.3d 1025, 1039-39 (9th Cir.2005); <u>see</u> also <u>Hill v. BCTI Income Fund-I</u>, 23 P.3d 440, 445-46 (Wash. 2002) (applying <u>McDonnell Douglas</u> framework to state law discrimination claim) <u>overruled on other grounds by</u>, <u>McClarty v. Totem Elec.</u>, 137 P.3d 844 (Wash. 2006).

[2] The burden of persuasion remains on Mr. Belayneh at all times, despite the fact that the burden of production shifts to the company at this stage. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 511 (1993).

ORDER – 3

promoting him was merely a pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). He may prove pretext either by direct or circumstantial evidence. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002). Relying on circumstantial evidence to show pretext, however, requires Mr. Belayneh to "put forward specific and substantial evidence" challenging the credibility of Holland America's motives. Id.

The court concludes that Mr. Belayneh survives the initial hurdle of making out a prima facie case of discrimination as to each of Holland America's three hiring decisions. It is undisputed that Mr. Belayneh applied for the jobs, that he belongs to a protected group, and that the company selected someone outside of his class (i.e., a non-black, non-Ethiopian candidate) to fill the vacant positions. There is also no dispute that he met the bare qualifications for the Port Accounting Manager and the Senior Marketing Revenue Analyst positions. The only dispute at this stage of the burden-shifting paradigm is whether Mr. Belayneh can show that he was qualified for the third position of Revenue Performance Analyst. The job posting lists as a qualification: "[f]amiliarity with cruise revenue management concepts and/or prior revenue management experience, especially in the travel industry." Grigsby Decl., Ex. A. Although he admits that he had no direct experience in revenue management, Mr. Belayneh testifies that he had some "knowledge" of the subject. Belayneh Dep. Vol. I at 195-97. Given that the degree of proof required at this stage of the McDonnell Douglas framework is "minimal," see Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994), the court is satisfied that Mr. Belayneh has made out a prima facie case as to all three hiring decisions.

Despite creating an initial inference of discrimination, Mr. Belayneh's claim ultimately fails because he has not adduced evidence that Holland America's justifications for its hiring decisions are mere pretext for discrimination. For each

ORDER – 4

promotional opportunity in question, Holland America provides evidence that its selection hinged on the quality of the applicant (e.g., job experience, performance reviews, supervisory recommendations). As to the Port Accounting Manager position, Mr. Belayneh's direct supervisor Paul del Rosario attests that he chose applicant Yuliana Widjaja from a different accounting group because she came with a favorable recommendation, and possessed superior qualifications in terms of her leadership, communication, and accounting skills. Del Rosario Decl. at ¶ 8-9. Similarly, David Matsumoto, who was responsible for filling the Senior Marketing Revenue Analyst position, states that he chose Kerry Byun (one of Mr. Belayneh's coworkers) because she was a better communicator and more efficient than the other applicants. Matsumoto Decl. at ¶ 10. Finally, as to the Revenue Performance Analyst position, the supervisor for that position, Paul Grigsby, selected a candidate with prior experience in revenue analysis and forecasting. Grigsby Decl. at ¶ 4. Mr. Grigsby attests that the skill set of a revenue analyst differs from that of a port accountant like Mr. Belayneh, and thus, Mr. Grigsby selected an applicant with actual on-the-job experience in that area. Id. at ¶ 5.

Mr. Belayneh fails to come forth with specific and substantial evidence of pretext in response to Holland America's legitimate, race- and national origin-neutral reasons for preferring its hires over Mr. Belayneh. His primary argument is that he was more qualified than the other candidates because he had been with the company for a longer period of time. Mr. Belayneh does not provide any evidence that this was in fact one of the desired qualifications. Indeed, the undisputed evidence is to the contrary. Neither of the job postings in the record list as a requirement that a candidate work for the company for a particular number of years. See Del Rosario Decl., Ex. H (job posting for Port Accounting Manager); Grigsby Decl., Ex. A (job posting for Revenue Performance Analyst). Hiring supervisor Mr. del Rosario likewise confirms that in making his

ORDER – 5

decision, he looked for demonstrated skills, not tenure with the company.  Del Rosario Decl. ¶8.  Mr. Belayneh also attempts to show his superior qualifications (and thus, pretext) by picking apart the performance reviews of the other applicants, in particular Ms. Widjaja, the Port Accounting Manager hire, and Ms. Byun, the Senior Marketing Revenue Analyst hire.  The court finds this line of argument unavailing given that Mr. Belayneh fails to tie his criticism of their performance reviews to the criteria that Holland America employed in forming its hiring decisions.  What is more, both Ms. Widjaja and Ms. Byun received higher performance appraisal scores than Mr. Belayneh.  Andrews Decl., Ex. D, E.

Mr. Belayneh also suggests that friendships, not qualifications, motivated Holland America's decision-makers.  He complains that his supervisor Mr. Del Rosario "always felt uncomfortable with [his] accent and often failed to invite him in any social gathering."  Pl's Opp'n at 5.  Mr. Belayneh does not provide any evidence that he was "often" (let alone, ever) excluded from a company-sponsored social event.  That Mr. del Rosario became friends with Ms. Byun and that he took his employees to lunch on occasion, is insufficient evidence of pretext – particularly when Mr. del Rosario also testifies that he took Mr. Belayneh to lunch.  Del Rosario Dep. at 40, 63.

Lastly, as to the Senior Marketing Revenue Analyst position, Mr. Belayneh appears to argue that the company must have held discriminatory motives because it failed to follow its own procedures for posting the job opening.  Nevertheless, Mr. Belayneh fails to refute Mr. Matsumoto's race-neutral reason for the expedited hiring process.  In any case, the court cannot conceive of the relevance of this particular practice given that Mr. Belayneh in fact applied for the position.

The court concludes that Mr. Belayneh fails to raise a genuine factual issue regarding the authenticity of Holland America's motivations in selecting other candidates

ORDER – 6

for the three positions in question.  Accordingly, the court GRANTS Holland America's motion for summary judgment on Mr. Belayneh's failure-to-promote claim

**B.     Hostile Work Environment**

To establish a prima facie hostile work environment claim against Holland America under either Title VII, section 1981, or WLAD, Mr. Belayneh must raise a triable issue of fact as to whether (1) the company subjected him to verbal or physical conduct because of his race (2) the conduct was unwelcome, and (3) the conduct was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment."  Vasquez v. County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003) (emphasis added); Manatt v. Bank of America, 339 F.3d 792, 797 (9th Cir. 2003) (applying Title VII framework to section 1981 claim); MacDonald v. Korum Ford, 912 P.2d 1052, 1058-59 (Wash. Ct. App. 1996) (employing same federal standard to hostile work environment claim).  In examining these factors, the court must consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Vasquez, 349 F.3d at 642 (internal quotation omitted).  The conduct at issue must be perceived as abusive, both subjectively from Mr. Belayneh's perspective and objectively from the perspective of a reasonable person of Mr. Belayneh's race and national origin.  McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1115 (9th Cir. 2004).

The court concludes that Mr. Belayneh has fallen far short of making a showing of workplace harassment.  A hostile work environment is typified by severe or pervasive slurs, offensive jokes, epithets, derogatory remarks, taunts and the like.  See, e.g., Nichols v. Azteca Rest. Enter., Inc., 256 F.3d 864, 876, 870 (9th Cir. 2001) (holding that hostile work environment existed where plaintiff subjected to insults, name-calling, and

vulgarities – often on a daily basis).  By contrast, Mr. Belayneh supports his claim by citing two stale and unrelated incidents.  As to the first, he testifies that four years prior to his departure, a co-worker asked him on one occasion whether he was taking drugs.  Belayneh Dep. Vol. I at 99-100.  Mr. Belayneh goes on to state that the company "chose to do nothing about it."  Pl.'s Resp. at 13.  There is no support for this latter contention in the record.  He also contends that a former supervisor, Robert Hon, told him to leave the company if he disagreed with his performance appraisal.  Belayneh Dep. Vol. I at 72.  Even assuming some race-based animus on the part of the speakers and some fault on the part of the company, these two stray remarks do not as a matter of law constitute a hostile work environment.  See Vasquez, 349 F.3d 643-44 (reviewing caselaw and holding that two racial epithets directed at plaintiff was insufficient to create a hostile working environment).  Indeed, Mr. Belayneh admits that he never heard any racial slurs or other derogatory remarks while at work.[3]  Belayneh Dep. Vol. I at 99.  As to the remaining accusations of workplace harassment, the court declines to consider allegations that find no support in the record.  See Fed. R. Civ. P. 56(d)[4]; Celotex, 477 U.S. at 324.  Therefore, the court GRANTS Holland America's motion for summary judgment on Mr. Belayneh's hostile work environment claim.

---

[3]In his brief, Mr. Belayneh contends that Mr. Hon used the "n-word" to describe an employee of color.  Pl.'s Resp.  There is no support for this allegation and the court cautions counsel to refrain from making such accusations.  The sole indication of a racial slur that finds support in the record comes from Mr. Hon's admitted use of the "n-word" in telling an off-color joke at some unspecified time, likely outside of the workplace.  Hon Dep. at 40.  There is no indication that Mr. Belayneh was present for or even knew that Mr. Hon made such a comment.  See McGinest, 360 F.3d at 1117 (noting that harassment may be actionable even if not directed at the plaintiff, so long as it occurs in his or her *presence*).

[4]The relevant portion of Fed. R. Civ. P. 56(e) states: "[w]hen a summary judgment motion is made . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

ORDER – 8

**C.    Constructive Discharge**

Quite simply, there are no facts from which a jury could conclude that Mr. Belayneh felt "forced to quit because of intolerable and discriminatory working conditions." Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465 (9th Cir. 1994); see also Martini v. Boeing Co., 971 P.2d 45, 50 n. 3 (Wash. 1999). In support of this claim, Mr. Belayneh cites his testimony in which he describes communicating with two managers about his desire to be promoted. Belayneh Dep. Vol. II at 28, 29, 40. He complains that the company did little in response to his concerns about climbing the company ladder. It appears that his letter to one of the managers went unanswered. Id. at 40. Even so, he describes the other manager as encouraging him to apply for other positions. Id. at 30. At the time, he did not mention discrimination. Id. at 30, 46. Only in his letter to the company CFO three months prior to submitting his letter of resignation did Mr. Belayneh make reference to his race and national origin. Belayneh Decl., Ex. C at 1. Without more, the court cannot conclude that Mr. Belayneh felt forced to quit after eleven years with the company because of his employer's "oppressive actions." See Barrett v. Weyerhaeser Co. Severance Pay Plan, 700 P.2d 338, 343 (Wash. App. 1985). The court GRANTS summary judgment to Holland America on this claim.

**D.    Outrage**

The elements of the tort of outrage are (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) plaintiff's severe emotional distress. Kloepfel v. Bokor, 66 P.3d 630, 632 (Wash. 2003). Although these three elements are factual questions for the jury, this court must first determine whether reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. Robel v. Roundup Corp., 59 P.3d 611, 619 (Wash. 2002). The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond

ORDER – 9

all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Kloepfel, 66 P.3d at 632 (quoting Restatement (Second) of Torts § 46 cmt. d); see, e.g., Seaman v. Karr, 59 P.3d 701, 710-11 (Wash. Ct. App. 2002) (holding that outrage claim survived summary judgment where law enforcement mistakenly invaded wrong house with machine guns and flash-bang grenades, set the carpet on fire, knocked an elderly resident to the ground and threatened to kill him if he moved, painfully handcuffed the innocent resident and refused to admit their mistake).

Here, the question is not a close one. Mr. Belayneh points to the same evidence (and unsupported allegations) that he cites in support of his other claims. Making every inference in favor of Mr. Belayneh, the court concludes that reasonable minds would not disagree over whether the foregoing rises to the level of indecency, atrocity and intolerability that this tort requires. It does not. Accordingly, the court GRANTS summary judgment for Holland America on Mr. Belayneh's outrage claim.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS Holland America's motion for summary judgment on all claims (Dkt. # 12) and directs the clerk to enter judgment for Defendant consistent with this order.

JAMES L. ROBART
United States District Judge

ORDER – 10